# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STACEY A. CALKINS,

      Plaintiff,

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:11-cv-728

Dlott, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Stacey A. Calkins filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  See 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents five claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

In October 2007, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning January 23, 2007 due to both mental and physical impairments.  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing de novo before an Administrative Law Judge  ("ALJ").  In April, 2010, an evidentiary hearing was held before ALJ Deborah Smith, at which Plaintiff was represented by counsel.  (Tr. 26-64).  At the hearing, the ALJ heard testimony from

Plaintiff, and from a vocational expert.  On June 11, 2010, the ALJ denied Plaintiff's applications in a written decision.  (Tr. 8-25).

The record on which the ALJ's decision was based reflects that Plaintiff was 36 years old at the time of her disability onset date.  Plaintiff is well educated, having completed both college and a Master's Degree in Public Administration. (Tr. 159). Plaintiff has past relevant work in a large number of skilled jobs, but has not worked since her alleged onset date. (Tr. 17).  Based upon the record and testimony presented, the ALJ found that Plaintiff had the following severe physical impairments: "headaches, chronic pain in the cervical spine, and foot problems" as well as severe mental impairments of "depression, anxiety, and pain disorder."  (Tr. 10).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  (Tr. 11). Instead, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light work, restricted by the following:

> The claimant can never climb ladders, ropes or scaffolds and she can only occasionally crawl.  She can only occasionally reach at or above shoulder level with both arms.  She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  The claimant can comprehend, remember, and carry out a variety of simple tasks and some moderately complex tasks.  She can work at reasonable pace in work settings that do not require strict production goals or high quotas.  She can function when social interaction is necessary to complete routine daily activities and she is able to engage appropriately in simple social interactions on a superficial level.  The claimant can adapt to changes as long as her work is simple and routine and changes can easily be explained.

(Tr. 12-13).

Based upon the testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is capable of

performing two of her prior relevant jobs: working as a development associate or as a library assistant.  (Tr. 18).  In the alternative, the ALJ determined that "there are other jobs existing in the national economy that [Plaintiff] is also able to perform."  (Tr. 19). Therefore, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Regulations, and was not entitled to DIB.  (Tr. 20).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by improperly assessing Plaintiff's headache pain and fibromyalgia, by rejecting the opinion of her psychiatrist, and by relying upon erroneous vocational expert testimony.  As discussed below, the Court finds no error and therefore recommends that the Commissioner's decision be affirmed.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  See 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.   If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Statement of Errors

Plaintiff's five assertions of error relate to the fourth and fifth steps of the sequential analysis. Viewed in total, the essence of Plaintiff's claim is that the ALJ improperly evaluated her residual functional capacity. More specifically, Plaintiff contends that the ALJ erred: (1) by failing to account for the frequency and severity of her headaches; (2) by failing to consider the impact of her fibromyalgia; (3) by improperly weighing the medical evidence; (4) by improperly assessing Plaintiff's pain and credibility; and (5) by relying on erroneous vocational expert testimony. The first and fourth assertions of error are discussed together, for the convenience of this Court.

### 1. Frequency and Severity of Headaches/ Pain and Credibility

Plaintiff argues that the ALJ erred by failing to take into account both the frequency and severity of Plaintiff's headaches. In a closely related argument, Plaintiff contends that the ALJ erred in discounting the severity of her pain and in negatively assessing her credibility. There is no question that pain alone, if the result of a medical impairment, may be severe enough in some cases to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). Upon inquiry from her attorney, Plaintiff testified that her headaches are so painful that she would "miss probably seven days a month" of work. (Tr. 61). However, aside from Plaintiff's hearing testimony, no treating or consulting medical source has ever opined that Plaintiff's physical symptoms, including her headaches, are disabling. Likewise, no physician or other medical source has offered an opinion concerning how many days per month Plaintiff would be required to miss due to her headaches or other complaints of pain.

The vocational expert (VE) testified that Plaintiff would be able to miss only 2-3 days per month and remain fully employed.  The ALJ discounted Plaintiff's testimony that she would miss seven days per month due to the severity of her headache pain,[1] determining that she could continue to work despite her frequent headaches.

Plaintiff testified that she suffered from a head injury in infancy, and began developing headaches and neck pain as a result, at age 7.  (Tr. 40).  She testified she was told she has arthritis in her neck that will require surgery eventually, although no surgery has ever been recommended.  She testified that her headaches and neck pain have gradually worsened over time, and that they were exacerbated following an automobile accident in August or September of 2006.  (Tr. 41, 46-47).  As a result, she claims disability beginning in January 2007.

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475.   However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."  *Id.* at 476. (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).   Further, a credibility determination cannot be disturbed "absent a compelling

---

[1] The ALJ's opinion references Plaintiff's testimony that her headaches are daily and unpredictable, and that she would miss 7 days per month due to the most intense headaches.  (Tr. 13-14).  In the end, the more important issue is not the frequency or number of days that Plaintiff experiences pain, but rather, the effect of that pain and any limitations that result therefrom.

reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

The ALJ stated that she was considering all of Plaintiff's symptoms "and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p."  (Tr. 13).  After reviewing Plaintiff's complaints, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  However, the ALJ also determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," and that "[o]verall, the medical evidence of record does not support the claimant's allegations of disabling symptoms and limitations."  (Tr. 14).

Substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling headache pain are not credible, notwithstanding some favorable evidence that Plaintiff has long suffered from migraine headaches.  While the objective medical record supports migraine headaches, regular headaches, and neck pain, the records reflect only mild abnormalities that do not fully support Plaintiff's complaint that her headaches cause disabling pain.

By way of example, the ALJ contrasted Plaintiff's complaints of a stiff neck and migraine headaches since age 7 with MRI and EMG evidence that showed few

abnormalities and no neurological symptoms. (Tr. 14). The ALJ also cited to treatment records from pain specialist John Kelly concerning Plaintiff's migraine and neck pain. Plaintiff reported to Dr. Kelly that she was experiencing migraine headaches 7-8 times per month following her car accident. Dr. Kelly attributed the migraines to minor disc bulge, treated Plaintiff with trigger point injections, and recommended Imitrex injections and Fioricet for pain management and prevention. (Tr. 386-390). Despite Plaintiff's complaints, his physical exam revealed normal muscle strength, normal muscle tone, no atrophy, and intact sensation and reflexes, and normal range of motion. (*Id.*).

The ALJ referenced numerous additional objective and clinical records that reflected either normal or only mild findings which are inconsistent with the severity of Plaintiff's physical complaints. (Tr. 15-16). As stated, no doctor has ever opined that Plaintiff's physical complaints are disabling. Consulting physicians Dr. Manos and Dr. Das found only mild objective abnormalities. (Tr. 14-15, 455-463, 469). Plaintiff's treating family doctor, Jan Spore, M.D., noted that it is difficult to separate Plaintiff's reports of migraines from her neck and back pain. (Tr. 281). However, even Dr. Spore assessed not more than a mild cervical strain, and a July 2006 EMG and nerve conduction study of the shoulders and neck was normal. (Tr. 281, 319).

Objective records following Plaintiff's car accident, which Plaintiff asserts led to a disabling increase in her headaches, did not reveal any significant change in her condition. A November 2006 x-ray showed only a minimal degenerative change in Plaintiff's cervical spine. (Tr. 265). A January 2007 MRI revealed only slight changes from a prior MRI dated July 2006. (Tr. 321, 433). In April 2008, Plaintiff sought treatment from Dr. Saul, who noted no abnormalities. A May 2008 cervical spine MRI

revealed only small central disc extrusions with no cord compression or spinal stenosis and only mild degenerative spondylosis.  (Tr. 426).  An MRI of Plaintiff's brain was normal.  (Tr. 427).  She saw Dr. George Guo, M.D., for headache and neck pain beginning in November 2008, but his notes reflect that medication had been helping.  (Tr. 514).  While documenting Plaintiff's complaints of migraines, he also consistently documented physical and neurological examinations that were "unremarkable."  (Tr. 515, 518, 520).  In November 2009, Plaintiff reported she was "generally doing well" despite complaints of headaches when she was out of her Imitrex medication.  (Tr. 427, 514, 519-520).  A record dated February 17, 2010 reports that Plaintiff "will *continue to cut down* use of Foricet and pain medication."  (Tr. 522, emphasis added).

The ALJ determined that Plaintiff's daily activities appeared to be inconsistent with her claim that she is disabled.  (Tr. 186-189).  Plaintiff maintains a relatively active lifestyle.  She is the primary caretaker for her 4 year old daughter, bathes her, takes her to appointments and activities, does laundry, prepares the family meals, does the housework, drives, shops for her household, and watches TV.  (Tr. 186-187).  She also cares for the elderly family cat, cleaning its litter box and taking it to the vet.  (Tr. 186).  She states that she used to be able to do "more" housework and yardwork, and attend "more social events," but both explicitly and implicitly admits that she can still do those things, albeit on a less frequent basis.  (*Id.*).  She states that she continues to prepare meals daily, taking 15-35 minutes per meal, that she does dishes for 2 hours "every day or two," that she also does laundry for 2 hours nearly every day.  She states that she does not need help, except for moving larger objects or mopping the floor.  (Tr. 188).  She continues to enjoy "movies, exercise, art, shows, reading, gardening, watching TV,

[and] live music." (Tr. 189). Although she complains that she is unable to "go out *as often* to the movies, art shows, or to listen to live music" due to her neck pain and headaches, she does not claim that she has discontinued those activities entirely, and states that she reads and watches TV every day. (*Id.*, emphasis added). She enjoys visiting people in their homes, and on the computer. (*Id.*). While she complains that she "rarely" goes anywhere for social reasons, she excludes from that description "except for holidays, birthdays to see relatives or friends." (*Id.*). When asked at the hearing how long a time period she was able to sit and drive, Plaintiff responded that she and her husband took turns driving on a recent trip to Hilton Head, South Carolina. (Tr. 31).

In this appeal, Plaintiff argues that "a claimant can structure her daily activities to do activities on good days" and that she can "have help with child care and other matters around the house." (Doc. 8 at 3). However, Plaintiff did not offer testimony that her daily activities were severely limited or that she receives significant help from anyone; in fact, her testimony was that her husband is of very little or no assistance. (Tr. 42-43).

In assessing Plaintiff's overall credibility, the ALJ also pointed out discrepancies between the records of Plaintiff's "brief and sporadic" mental health treatment and her report of disabling mental illness. (Tr. 16-17). Finally, the ALJ noted that Plaintiff suffered from exactly the same impairments –chronic migraines, headaches, and neck pain - "at approximately the same level of severity prior to January 2007," (Tr. 19), but she was able to work for many years, attend school, and earn a Master's degree, despite those impairments. Plaintiff has provided mixed explanations as to why she

left her last position as development director for Thomas More College.  She stated on her disability application that she stopped working because of her "condition" (headaches) but also for "other reasons."  (Tr. 145).  She stated that after she gave birth to her daughter, "the struggle of working and raising an infant was too difficult physically."  (Tr. 145).  She admitted that she was "fired…because we weren't getting enough grants" (Tr. 34), but also hypothesizes that she asked for sick leave too frequently.  (Tr. 43, 145).  At the hearing, she testified that she took only the full number of sick and vacation days allotted to her, but not more than that number.  (Tr. 44, "I would say I missed about two ---the number of days I was supposed – I was allowed to miss.").

Based upon Plaintiff's testimony and records concerning Plaintiff's relationship with her husband, the ALJ concluded that Plaintiff's problems "appear to be primarily socio-economic in nature," because an inheritance from Plaintiff's grandmother and lawsuit proceeds from her motor vehicle accident "are running out."  (Tr. 18).  Those concerns are well documented in Plaintiff's psychiatric records.  (Tr. 502, noting patient's "social issue regarding the care of her three year old daughter" and "restraining order against her daughter's father;" Tr. 484, 488-489, noting bipolar husband who refuses to work, and Plaintiff's monetary concerns with running out of inheritance).  The ALJ noted: "She has marital concerns as her husband is difficult and refuses to work…She is also trying to raise a 4 year old child without much assistance from her husband."  (Tr. 18).

Substantial evidence supports the ALJ's finding that Plaintiff's claimed limitations conflict with the medical evidence in the record.  Because the severity of Plaintiff's

11

reported level of pain was not supported by medical evidence or the record as a whole, it was proper for the ALJ to discount the credibility of her account.

Plaintiff complains that her headaches increased after her car accident. However, the ALJ discussed Plaintiff's contention that her headaches increased after her motor vehicle accident, as well as the lack of any objective basis for a long-term worsened condition. (Tr. 14). In fact, one ER record for migraine reflects that Plaintiff's treating physicians had advised that while her headaches were expected to increase temporarily, that increase likely would subside within a month of her accident. (Tr. 270). The same ER record reflects no acute distress.

Plaintiff contends that the "normal" findings in her cervical spine mean "nothing" when considering the frequency and severity of Plaintiff's headaches and migraines. But the absence of objective and clinical findings to support subjective complaints of pain is an appropriate factor to consider under SSR 96-7p. Because the ALJ found inconsistencies between the objective medical evidence and plaintiff's testimony about the extent of her pain and limitations, it was permissible for the ALJ to discredit plaintiff's testimony about the severity of her symptoms. Given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports the ALJ's decision to discredit plaintiff's statements about the severity of her symptoms.

Plaintiff criticizes the ALJ for failing to consider Plaintiff's use of strong pain medications, including Imitrex injections, Fioricet, Topamax, and Percocet. (Tr. 156-167, 197, 221, 224, 401, 514). However, the ALJ did question Plaintiff about her medications, and Plaintiff testified that she is "able to manage the pain better with the medication, definitely." (Tr. 51). In her opinion, the ALJ discussed the reported side

effects of Plaintiff's medication, as well as Plaintiff's testimony concerning what measures she takes to alleviate pain other than medication, and what exacerbates her pain. (Tr. 13). Although 20 C.F.R. §404.1529(c) and SSR 96-7p require an ALJ generally to consider a multitude of factors in evaluating an individual's pain, in this case there is no evidence that Plaintiff's use of pain medications so limits her activities that it prevents her from all work, rather than merely impacting concentration and memory. The ALJ's failure to discuss Plaintiff's medications in greater detail was not error, given that the ALJ factored the side effects into Plaintiff's mental RFC, and considering that Plaintiff has taken medications for chronic migraine headaches for many years. There is no legal requirement for an ALJ to discuss every medical record, so long as the explanation of the factors considered under SSR 96-7 is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(internal quotation marks and footnote omitted).

As additional evidence of the severity of her pain, Plaintiff testified that at times when she was working, she would lie on the floor in pain. (Tr. 44). Plaintiff argues that her strong work record should have supported her credibility assessment. But the record reflects, and the ALJ noted, that Plaintiff did not follow through on several recommendations from mental health providers that she pursue other work.

Plaintiff also points to the fact that she has consistently sought additional treatment for her headaches. However, the fact that Plaintiff has continued to pursue treatment does not mandate a conclusion that her pain level is disabling. The ALJ took

note of all of Plaintiff's treatment records and the measures she has pursued to alleviate her pain, including the surgical consult (which reflected no basis for surgery).

In short, while all of the evidence that Plaintiff points to supports the finding that she experiences chronic and severe headache pain, substantial evidence remains to support the ALJ's conclusion that the severity of her pain does not preclude her from all employment.  That evidence includes the relatively mild objective findings concerning her headaches and neck pain, evidence that her medications were at least somewhat effective, and evidence of her daily activities.  Where substantial evidence exists to support the ALJ's conclusion that Plaintiff's headaches were not disabling, the fact that contrary evidence exists is not grounds for reversal.  *Contrast Lindamood v. Astrue*, 2008 WL 2674666 (July 7, 2008)(reversing for award of benefits where medical evidence, including opinions of long-term treating physicians that plaintiff's pain level was disabling, supported conclusion that fibromyalgia, disc disease, migraines, chronic pain syndrome, depression, anxiety and other maladies precluded all work).

## 2. Fibromyalgia

In addition to criticizing the ALJ's credibility assessment and discounting of the severity of her headaches, Plaintiff argues that the ALJ erred by failing to discuss her alleged fibromyalgia.  The ALJ discussed this issue but noted "[t]here is no diagnosis of fibromyalgia in the record."  (Tr. 18).  In finding fibromyalgia not to be "medically determinable," the ALJ stated that Plaintiff's allegation that she has fibromyalgia "is not supported by objective medical signs or findings."  (*Id.*).  Pointing to Sixth Circuit case law, Plaintiff argues that the nature of fibromyalgia evades "objective medical signs or findings." It is true that in *Rogers v. Comm'r*, 486 F.3d 234 (6th Cir. 2007), the Sixth

14

Circuit reversed based in part on the fact that there is no definitive objective test to determine the diagnosis and severity of fibromyalgia.  *See also Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)(*per curiam*).  In this case, however, the ALJ's decision concerning Plaintiff's alleged fibromyalgia reflects no error.

As explained in *Rogers*, "[t]he process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials."  *Id.*, 486 F.3d at 244.  Unlike Plaintiff here, the plaintiff in *Rogers* had been diagnosed with fibromyalgia by both treating physicians and a specialist who - in multiple records- repeatedly noted tender points of "classic fibromyalgia distribution."  The Sixth Circuit criticized the ALJ's rejection of that diagnosis despite evidence that the plaintiff had been "continually tested for and...increasingly exhibited the medically-accepted and recognized signs of fibromyalgia," with the diagnosis having been made by a specialist in fibromyalgia.  *Id.* at 244-245.  By contrast, Plaintiff in this case has never been referred to any specialist, and there is no evidence of evaluation of specific joint tenderness, extensive "rule out" testing as in *Rogers*, or any record at all of a formal diagnosis.  In *Rogers*, the ALJ rejected the treating physicians' opinions without *any* explanation, whereas ALJ Smith offered a clear, albeit succinct, explanation for her rejection of the diagnosis of fibromyalgia.

In addition to noting the lack of any formal diagnosis by any qualified physician or supporting records as in *Rogers*, the ALJ asked Plaintiff if she had ever seen a specialist, such as a rheumatologist, regarding her alleged fibromyalgia; she had not. (Tr. 38-39).  In her disability related paperwork, Plaintiff lists many other diagnoses, but

15

there is no mention of fibromyalgia other than a brief reference on April 24, 2008 to Dr. Saul's office "think[ing] she has fibromyalgia, but not sure." (Tr. 204). However, Dr. Saul's records contain no reference to fibromyalgia.

Plaintiff points to a medical record from Dr. Guo, her pain doctor, wherein he prescribed Lyrica based upon Plaintiff's self-reported fibromyalgia pain. But Dr. Guo did not make his own diagnosis of fibromyalgia; therefore, the ALJ did not err by discounting Dr. Guo's unsupported reference to Plaintiff's self-report of her condition. (Tr. 518).

Plaintiff's psychiatrist, Dr. Tangvald, also noted pain and fatigue that Plaintiff reported from fibromyalgia, but again, made no independent diagnosis. (Tr. 512-513). As a psychiatrist, he would not have been qualified to do so. Plaintiff cites to no evidence in that any qualified physician has actually diagnosed her with fibromyalgia. Instead, the fleeting references that appear in the records reflect complete reliance on Plaintiff's reported history. Therefore, the ALJ's conclusion that Plaintiff does not suffer from a medically determinable diagnosis of fibromyalgia was not error.

Even if Plaintiff had been diagnosed with fibromyalgia by a qualified physician– a fact not demonstrated here – not every suggestion of fibromyalgia requires a conclusion that the condition is "severe" or that it results in disability. As the Sixth Circuit has noted, most people are not totally disabled from fibromyalgia. *See Vance v. Comm'r of Social Security*, 260 Fed. Appx. 801, 806, 2008 WL 162942 at *4 (6th Cir. Jan. 15, 2008). *Accord, Brazier v. Secretary of Health and Human Serv.*, 61 F.3d 903, 1995 WL 418079 (6th Cir. July 13, 1995)(table, upholding rejection of claim of disabling pain where ALJ found that neither diagnosis of fibromyalgia nor resulting pain were well

supported in medical records); *Potts v. Sec. of Health and Human Servs.*, 1 F.3d 1241, 1993 WL 303363 *6 (6th Cir. Aug. 9, 1993)(table, affirming ALJ finding that did not consider fibromyositis to be severe or to support additional limitations based on pain, where there was no evidence in the record as to the severity or effects of plaintiff's fibromyositis).  In addition to the lack of records supporting the basis for a diagnosis of fibromyalgia, the record reflects an activity level inconsistent with significant work limitations from fibromyalgia.

### 3.  Weight Given to Medical Opinion Evidence

The ALJ gave "great weight" to the opinions of consulting medical sources, but gave "little weight" to the April 2010 mental RFC assessment completed by Plaintiff's treating psychiatrist, Dr. Tangvald.  Plaintiff asserts that this was error in two respects: (a) because the ALJ failed to give adequate reasons for rejecting Dr. Tangvald's opinions; and (b) because the ALJ adopted the opinions of consultants who did not review Plaintiff's complete records.

### a.  Substantial Evidence Exists to Reject Dr. Tangvald's RFC

Social security regulations generally require the opinions of treating physicians to be given the greatest weight, with the opinions of consulting physicians who have actually examined the plaintiff to be given more weight than those of non-examining consultants.  *See* 20 C.F.R. §404.1527(c)(1) and (c)(2); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical

17

> impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting prior version of 20 C.F.R. § 404.1527(c)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. §404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.*; 20 C.F.R. §404.1527(c)(2). As with other portions of the ALJ's analysis, the reasons provided for not giving controlling weight to the opinion of a treating physician "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p.

Of course, not every opinion uttered by a treating physician is entitled to the same weight. The determination of a claimant's RFC, like the determination of disability, is "reserved to the Commissioner." 20 C.F.R. §404.1527(d). Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

In this case, after finding that Plaintiff's mental health treatment was only "brief and sporadic," (Tr. 16),[2] the ALJ turned to the April 2010 mental RFC assessment completed by Dr. Tangvald. The ALJ gave "little weight" to that assessment, completed two months after Plaintiff's last recorded visit with Dr. Tangvald's office.[3] The psychiatrist opined that Plaintiff retained poor to no abilities to perform any occupational activities, or to make any personal-social adjustments. (Tr. 17-18). The ALJ reasoned that if Plaintiff were actually impaired to the degree that Dr. Tangvald suggested, she "would not be able to care for herself, her child, or her husband." (Tr. 18). In fact, as discussed above, Plaintiff reported that she takes care of her toddler and husband, an elderly cat, visits friends in their homes, and communicates with friends via computer. (Tr. 186-189). In addition, the ALJ found it "questionable why Dr. Tangvald's office would have referred her to the BVR [Bureau of Vocational Rehabilitation] if in fact she

---

[2]Plaintiff does not dispute this conclusion. The ALJ pointed out that although Plaintiff testified to years of mental health treatment for depression and anxiety, and that psychologist Harold Kelso treated her for a pain disorder in 2006, the treatment records did not corroborate those assertions. Instead, the records reflected more limited mental health treatment for relatively brief periods. (Tr. 16). As Defendant points out, the two periods of time during which Plaintiff sought recent mental health treatment coincide with the months between her initial denial of disability and reconsideration, and shortly before her hearing date.

[3] Plaintiff testified that she was continuing to see Dr. Tangvald every two months, and Mr. Hill more often. (Tr. 14). However, Plaintiff's records, and her Statement of Errors, reflect only a four-month period of treatment. (Doc. 5 at 3, noting Plaintiff saw Dr. Tangvald for treatment from October 2009 until February, 2010).

had no ability to interact or engage in any occupational activities." (*Id.*).  The ALJ additionally found Dr. Tangvald's opinion to be "inconsistent with [Plaintiff's] treatment history and activities."[4]

Last, the ALJ found Dr. Tangvald's assessment to be unsupported by Dr. Tangvald's own records, considering his finding that Plaintiff suffered from only a "mild cognitive disorder," and an absence of clinical findings that would support such severe limitations.  As discussed with respect to the fibromyalgia issue, the ALJ determined that Dr. Tangvald (improperly) considered "non-psychological factors as part of his assessment as he refers to the claimant's chronic pain from fibromyalgia and reports of fatigue." (Tr. 18).  Indeed, Plaintiff's alleged "chronic pain from fibromyalgia" appears to have been a significant basis – if not the primary basis- for Dr. Tangvald's opinions. (*See* Tr. 512).  Because Dr. Tangvald is a psychiatrist whose area of expertise was Plaintiff's mental condition, it was not error for the ALJ to reject his assessment of Plaintiff's alleged fibromyalgia pain.  *See Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990)(affirming where ALJ rejected psychiatrist's opinion that was based mostly on claimant's subjective complaints).

The record supports the ALJ's rejection of Dr. Tangvald's extreme RFC opinions. In her four months of treatment with Dr. Tangvald, from October 2009 through February 2010, Plaintiff reported that she was working on a disability application.  (Tr. 491). While obtaining her psychiatric prescriptions from Dr. Tangvald, Plaintiff was seen by

---

[4] The ALJ suggested that Dr. Tangvald may be "acting as an advocate for the claimant and simply believes her statements about her ability to function." (*Id.*).  Although it arguably would be error to reject a treating physician's opinion solely on the basis of perceived motivation (without evidence), in this case the ALJ committed no error because she relied upon the fact that Dr. Tangvald's opinion was not well-supported, and was inconsistent with the record as a whole.

therapist Brian Hill in the same office.[5] Mr. Hill encouraged Plaintiff to pursue a BVR evaluation in October and November 2009 – a fact that the ALJ found "suggestive of some preserved ability to work."  (Tr. 17).

Plaintiff argues that the referral to the BVR "does not mean much" because referral can be "for testing, for an evaluation, for counseling, for a part-time job, or for schooling," rather than for full-time work.  However, the ALJ cited the referral only as evidence of one of many inconsistencies in the record concerning Dr. Tangvald's opinions.  Moreover, the ALJ's inference is supported by Plaintiff's earlier treatment with psychologist Kenneth Manges, Ph.D., from June through September 2008.

At a therapy visit with Dr. Manges in June 2008, Plaintiff reported that she was "doing more around [the] house" (Tr. 475).  A note dated August 5, 2008 reflects that since her daughter started preschool, Dr. Manges recommended that she "pursue a career goal" such as a part-time job.  (Tr. 474).  Plaintiff reported on several visits that she maintains a gym membership to help her obtain regular exercise and to boost her self-esteem.  (Tr. 488, 489).  As Dr. Tangvald/Mr. Hill did several months later, Dr. Manges recommended that Plaintiff apply to BVR to determine her capacity to work. (Tr. 473-474).[6]  Plaintiff did not follow through on the suggestion by either Dr. Manges or by Dr. Tangvald/Brian Hill that she pursue an evaluation through BVR, suggesting disinterest.  Plaintiff expressed some interest to Mr. Hill, but also stated:  "I have thought about BVR but I'm worried about our lives changing."  (Tr. 484).  Although Plaintiff testified at the hearing that Dr. Tangvald/Mr. Hill changed their minds about the

---

[5] The records reflect that Dr. Tangvald reviewed Mr. Hill's notes as his supervisor.
[6] Plaintiff also reported to Dr. Manges that she was seeking disability benefits.

recommendation to pursue work through BVR, there are no notes that reflect any such change in opinion.

Plaintiff also disagrees with the ALJ's conclusion that Dr. Tangvald's assessment was inconsistent with his records, noting Dr. Tangvald's reference to a Beck depression questionnaire. However, the fact that Plaintiff's diagnostic score reflected "severe depression" does not mean that her symptoms are disabling. In determining Plaintiff's limitations, Dr. Tangvald heavily relied upon Plaintiff's alleged fibromyalgia pain and fatigue, but that diagnosis was properly discounted by the ALJ on the record presented. Dr. Tangvald's treatment notes reflect good social skills, concentration, insight, judgment, speech, and intelligence – all attributes that appear inconsistent with his opinions on Plaintiff's limitations. (Tr. 479-492). Therefore, the ALJ did not err by finding inconsistencies between Dr. Tangvald's clinical records and his disability-related opinions.

### (b) The Records Relied Upon by the Consultants

The ALJ relied most heavily upon the opinions of an examining psychologist, two non-examining consulting psychologists, and two non-examining consulting physicians. Plaintiff argues that not only did the ALJ err by rejecting the mental RFC assessment prepared by Dr. Tangvald, but that she also erred by accepting the mental and physical RFC assessments prepared by non-examining consultants who did not review Plaintiff's latest medical records. Specifically, the psychological consultants did not indicate review of Plaintiff's most recent four-month period of mental health treatment, and neither the consulting psychologists nor the consulting physicians appear to have reviewed documentation relating to Plaintiff's report of migraines to Dr. Niehauser (Tr.

466), or records from Dr. Guo and Dr. Tangvald. However, none of those three physicians opined that Plaintiff's headaches were disabling in severity. As previously discussed, Dr. Tangvald's mental RFC was appropriately considered and discounted by the ALJ, and inherently contradictory in that he recommended that Plaintiff be evaluated by BVR.

Despite the general rule that the opinions of treating physicians are given greater deference than the opinions of consultants, individual variations are permitted if supported by the record of a particular case. In *Blakley*, 581 F.3d at 409, the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). In *Blakley*, the court found error in part because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources." *Blakley* stands for the principle that if an ALJ credits the opinion of a non-examining consultant who has failed to review a complete record, she should acknowledge that fact and articulate her reasons for doing so. *Id.*, 581 F.3d at 409. If the ALJ fails to provide sufficient reasons, her opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or de minimis.

ALJ Smith's opinion fails to comply fully with *Blakley,* to the extent that the ALJ failed to acknowledge the existence of records that were not reviewed by the consulting experts on whom she relied. Nevertheless, I recommend that the Court affirm on

grounds that substantial evidence supports the ALJ's opinion, and any error was harmless or de minimis.

In February 2008 – a date more than a year after Plaintiff claims as her disability onset date and more than a year following her car accident – Plaintiff underwent a consulting examination by David Chiappone, Ph.D. Plaintiff reported to Dr. Chiappone that she does laundry, drives regularly, cooks, does dishes, goes shopping, maintains her own hygiene, reads, and takes care of her young child (then age 3). (Tr. 403). Dr. Chiappone diagnosed Plaintiff with a pain disorder with depression and anxiety, and assigned her with a Global Assessment of Functioning (GAF) score of 51, indicating moderate symptoms but not precluding work. He concluded that Plaintiff could understand and remember simple one and two step job instructions, but that she was moderately impaired in various job-related abilities, including her abilities to maintain concentration and attention, to relate to co-workers, supervisors and the public, and to carry out and persist over time. (Tr. 404). In addition, Dr. Chiappone found her mildly impaired in her ability to tolerate stress.

In March 2008, Bruce Goldsmith, Ph.D., conducted a records review for the state agency, and opined that Plaintiff had moderate limitations in social functioning and in concentration, persistence, or pace. (Tr. 411, 421). Similar to Dr. Chiappone, Dr. Goldsmith believed Plaintiff capable of comprehending, remembering, and carrying out a variety of simple tasks, as well as some moderately complex tasks. (Tr. 409-410). He opined that Plaintiff had the ability to work at a reasonable pace in setting that did not require strict production goals or high quotas, that she could function socially as necessary to complete routine daily activities, and that she could engage in simple

social interactions at a superficial level.  (Tr. 409-419).  Carl Tishler, Ph.D., a second non-examining medical consultant, affirmed Dr. Goldsmith's assessment in September 2008.  (Tr. 468).    In addition to these assessments of Plaintiff's mental RFC, an assessment of Plaintiff's physical RFC was completed by consulting physician Dr. Diane Manos on April 24, 2008, and affirmed by a reviewing consultant, Dr. Elizabeth Das, in October 2008. (Tr. 455-462, 469).

All of these consulting psychologists and physicians had access to post-accident records, including Plaintiff's report that she experiences 7-8 migraines per month.  (*See* Tr. 386).  However, the consultants also reviewed Plaintiff's report of her daily activity level, and other records that reflected a less-than-disabling level of pain.  (Tr. 410, 460). In short, despite the fact that the consulting psychologists and physicians did not review a handful of the most recent records, those records did not differ in any meaningful way from other post-accident records regarding the severity of Plaintiff's headache and neck pain.  Therefore, any error in failing to acknowledge the consultants' failure to review Plaintiff's most recent records was harmless.

### 4.  Vocational Errors

In a final assertion of error, Plaintiff argues that the VE's testimony that Plaintiff could continue to perform past relevant work, as a development assistant and library assistant, is inconsistent with the Dr. Chiappone's findings that Plaintiff is limited to simple work, and is moderately impaired in her attention and concentration.  (S*ee* Dr. Chiappone's opinion at Tr. 404).  The ALJ stated that she was giving "great weight" to the opinions of both Dr. Chiappone and the non-examining psychological consultants, but the mental RFC that the ALJ provided to the VE was not quite as restrictive as Dr.

Chiappone's RFC opinions.  The ALJ determined that Plaintiff could adapt to changes in her work environment "as long as her work is simple and routine and changes can easily be explained," but she did not limit Plaintiff to "one and two-step job instructions," as Dr. Chiappone opined.  (Compare Tr. 13 with Tr. 404).  The VE testified that if Plaintiff were as limited as Dr. Chiappone opined, she would be unable to perform her past relevant work, but would still be able to perform a substantial number of unskilled jobs.  (Tr. 56-57).  Thus, to the extent that any error exists in failing to incorporate Dr. Chiappone's more severe mental limitations, any error would be harmless in light of the VE's testimony (and the ALJ's alternative conclusion) that a substantial number of unskilled jobs remain that Plaintiff can perform.

Plaintiff further argues that her past relevant work is inconsistent with the consulting psychologist's opinion that Plaintiff is unable to perform work with "strict production goals or high quotas which could lead to stressful situations." (Tr. 409). However, the VE testified that the two referenced past relevant jobs would be compatible with Plaintiff's limitations, because neither have production quotas, and both involve only "simple to moderately complex tasks."  (Tr. 55).  And, as stated, even without including her past relevant work, Plaintiff can perform a substantial number of unskilled jobs.

Finally, Plaintiff asserts that the hypothetical improperly omitted the number of days per month that Plaintiff testified she would miss due to her headaches, the number of "extra breaks she would need on unskilled jobs," the side effects of her medications, and "the need to lie down on the floor."  (Doc. 5 at 12).   The hypothetical also omitted the extreme limitations proposed by Dr. Tangvald.  None of these omissions require

reversal of the ALJ's opinion in this case, because the limitations described to the VE accurately included all limitations supported by the record as a whole.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)(holding that an ALJ is required to incorporate only those limitations accepted as credible). For the reasons discussed earlier in this Report and Recommendation, the ALJ was not required to include the additional limitations that Plaintiff proposes.

### III.  Conclusion and Recommendation

For the reasons discussed above, I conclude that the ALJ committed no reversible error.  Her finding of non-disability is supported by substantial evidence in the record as a whole; therefore, IT IS RECOMMENDED THAT the Commissioner's decision to deny Plaintiff DIB benefits be AFFIRMED, and that this case be CLOSED.


*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

STACEY A. CALKINS,                                    Case No. 1:11-cv-728

        Plaintiff,                                    Dlott, J.
                                                      Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).